

# OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 28, 1947

Hon. E. V. Spence, Chairman
Board of Water Engineers
302 West 15th Street
Austin, Texas

Opinion No. V-319

Re: Sale of stored water
by Lower Colorado Ri-
ver Authority for irri-
gation and manufacturing
use outside the Authori-
ty's statutory bounda-
ries

Dear Sir:

The question and facts upon which our opinion
is requested are stated in your letter of May 23, 1947,
as follows:

"Your opinion is requested with
respect to the application of J. T.
Suggs, Box 3, Lake Jackson, Brazoria
County, Texas, now pending before the
Board, to appropriate and divert
40,000 acre-feet per annum of the unap-
propriated waters of the State of
Texas, the same to be diverted from
the Colorado River and the San Bernard
River for the purpose of utilizing
35,000 acre-feet for irrigation and
5,000 acre-feet for manufacturing. The
annual diversion from the sources of
supply to be on the basis of 10,000
acre-feet from the Colorado River of
which 2,000 is to be for manufacturing,
and 30,000 acre-feet from the San Bernard
River of which 3,000 should be for manu-
facturing.

" . . .

"The question arises - has the Lower
Colorado River Authority the right to sell
water to Mr. J. T. Suggs for irrigation and

> manufacturing purposes, and to use,
> distribute and sell the same outside
> the boundaries of the District, and
> in this case the lands being in the
> Brazos Valley."

We have examined the application of J. T. Suggs which states that any permit granted by the Board to divert water from the Colorado River will be contingent upon the ability of the applicant to purchase stored water from the Lower Colorado River Authority. The only waters, therefore, subject to this opinion, are those of the Colorado stored by LCRA. The question restated is whether or not LCRA may sell legally stored water to a purchaser who will deliver it for irrigation and manufacturing use beyond the boundaries of the District. In addition, and in order to fully answer your question, it will be necessary to decide whether a purchaser who has bought stored water from LCRA may, by following the procedure outlined in Article 7590, V. C. S., remove the water so purchased beyond the watershed.

The various conservation and reclamation districts, including LCRA, have been created by special acts under Article XVI, Sec. 59 of the Constitution, and have only those powers expressly granted or reasonably implied from the acts upon which their creation depends. The solution to your problem must be determined by ascertaining legislative intent as expressed in these acts.

LCRA was created by Acts 1934, 43rd Legislature, 4th C. S', Ch. 7, as amended. Its boundaries are coincident with the boundaries of Blanco, Burnet, Llano, Travis, Bastrop, Fayette, Colorado, Wharton, San Saba, and Matagorda Counties. The powers given LCRA are set out in Section 2 of the Act creating it and in so far as these powers touch on the subject under investigation it appears that LCRA is authorized to control, store, and preserve within the boundaries of the district the waters of the Colorado and its tributaries for any useful purpose, and use, distribute and sell the same within the boundaries of the district; develop and generate water power and electric energy within the boundaries of the district and distribute and sell water power and electric energy within or without said boundaries; aid in foresting within the watershed area of the Colorado and aid in prevention

of soil erosion and floods within said watershed area; acquire by purchase or otherwise any property, real, personal or mixed, within or without the boundaries of the district necessary or convenient to the exercise of the powers conferred upon it. Regardless of permits held, the district is not permitted to use for irrigation purposes any water unless expressly authorized by subsequent permit granted by the Board of Water Engineers; provided, however, that nothing shall prevent the district from selling for irrigation purposes within the boundaries of the district any water impounded by it under authority of law. Its use of water for the purpose of generating hydro-electric power is subordinated and made inferior to the rights of any citizen of Texas, or bodies politic, to build dams and impound flood waters within the watershed of the Colorado and its tributaries for domestic purposes and for the purposes of irrigation and any permit held by it is subject to the limitations indicated.

We find in the Act creating LCRA an express directive to use, distribute and sell within the boundaries of the district the waters which are controlled, stored and preserved by it. It is also provided that regardless of the permits which it holds the district is required to obtain a subsequent permit from your Board in order to use any but impounded waters for irrigation, it being expressly provided that nothing shall prevent the sale of water impounded under authority of law for irrigation within the boundaries of said district. LCRA may distribute and sell water power and electric energy within or without its boundaries, and is to aid in foresting and in the prevention of soil erosion and floods within the watershed area. It may acquire within or without its boundaries property necessary to the exercise of its powers. The Act indicates to us a carefully considered attempt by the Legislature to localize certain functions and to generalize others.

Turning now to the other Conservation and Reclamation Acts, all of which are compiled under Special Acts beginning at page 536, Vol. 21, V. C. S., we briefly review the provisions of these Acts in so far as they touch on the subject under investigation.

Brazos River Conservation and Reclamation District. Its boundaries are coincident with the watershed of the Brazos. It is authorized to control and employ the flood, storm and unappropriated flow waters of said

district in order to provide for the preservation of the equitable rights of the people of the watershed area; the conservation of water essential for domestic uses of the watershed; for the irrigation of lands in the watershed area; the equitable distribution of waters to the regional potential requirements for all uses, and to make available waters in the development of commercial and industrial enterprises in all sections of the watershed.

Central Colorado River Authority. It is composed of the County of Coleman. It is authorized to use, distribute and sell its waters within the boundaries of the district. Water power and electric energy may be sold within or without such boundaries. It is directed to aid in prevention of soil erosion and floods within the watershed area. It may acquire property necessary to the exercise of its powers, whether such property be within or without such district.

Guadalupe-Blanco River Authority. Its boundaries are coincident with the boundaries of Hays, Comal, Guadalupe, Caldwell, Gonzales, DeWitt, Victoria, Kendall, Refugio and Calhoun Counties. It is authorized to use, distribute and sell its waters within the boundaries of the district; water power and electric energy to be distributed and sold within or without such boundaries. It is to aid in foresting and in the prevention of soil erosion and floods within the watershed area. Property necessary to carry out its purposes may be acquired within or without the district.

Lower Neches Valley Authority. Its boundaries consist of Jefferson, Hardin, Tyler and portions of Liberty and Chambers Counties. It is accorded power of control and employment of the waters of the Neches in order to preserve the equitable rights of the people of the watershed area; for irrigation of land in said district and land without said district but within said watershed; for the equitable distribution of waters to the regional potential requirements for all uses, and to make available waters in the development of commercial and industrial enterprises in all sections of the watershed of the district.

Lower Concho River Water and Soil Conservation Authority. Its boundaries consist of Concho County. It is authorized to sell water power and electric ener-

gy within and without the district; to provide for the
irrigation of lands in the district and for the equita-
ble distribution of waters of the Concho and Colorado
Rivers to the regional potential requirements for all
uses, and to make available waters in the development
of commercial and industrial enterprises in all sec-
tions of the watershed area of the district.

Nueces River Conservation and Reclamation District.
Its boundaries describe by metes and bounds the water-
shed area.  It has power of control and employment of
the waters of the Nueces for domestic uses of the people
of the watershed; for irrigation of land in the water-
shed; for the equitable distribution of waters to the
regional requirements for all uses, and in order to
make available waters in the development of commercial
and industrial enterprises within the watershed.

Panhandle Water Conservation Authority.  Its bounda-
ries consist of certain named counties along the Red,
Canadian and Brazos Rivers.  The District has the au-
thority to distribute and sell water power and electric
energy within or without its boundaries; to provide for
the irrigation of lands in the watershed areas; pro-
vided, that such district may not use water for irriga-
tion unless it obtains a permit from the Board of Water
Engineers, it being expressly provided, however, that
nothing is to prevent the district from selling for
irrigation within its boundaries any water impounded
by it under authority of law, and to make available
waters in the development of commercial and industrial
enterprises in the watershed area of the district.

Sabine-Neches Conservation District.  Its bounda-
ries originally consisted of certain named counties,
but by amendment these boundaries were extended to
include the watershed areas of the Sabine and Neches
Rivers.  It has power of control and employment of the
waters of these rivers for the preservation of the
equitable rights of the people of the watershed; for
irrigation of all lands within said watershed; develop-
ment of commercial and industrial enterprises therein,
and to conserve such waters for the domestic uses of
the people of the district.

Sulphur River Conservation and Reclamation Dis-
trict.   Its boundaries consist of the watershed area
of the Sulphur River.  It may control and employ the

flood, storm and unappropriated flow waters to preserve the equitable rights of the people of the watershed; to conserve water for essential domestic uses within the watershed; for the irrigation of lands within the watershed; for the equitable distribution of its waters to the regional potential requirements for all uses, and to make available such water for commercial and industrial enterprises in the watershed.

Upper Red River Flood Control and Irrigation District. It is composed of Briscoe, Hall and Childress Counties. It has power to control, store and preserve within the boundaries of the district the waters of Prairie Dog Fork and Red River for the reclamation and irrigation of the lands of the district and to use, distribute, and sell the same within such boundaries.

Upper-Guadalupe River Authority. It is composed of the County of Kerr. It is authorized to use, distribute and sell its waters within the boundaries of the district for any useful purpose, and to acquire such property as may be necessary to carry out its purposes within or without the district.

We find in these acts a more or less uniform insistence by the Legislature to confine within the district's boundaries the sale generally by it of stored waters and specifically sale by it of stored waters for manufacturing and irrigation use; permission to sell and distribute electric energy and water power within or without such boundaries; a conservation policy regarding foresting, flood control and soil erosion covering the watershed area; the power to acquire property necessary to carry out the powers of the district within or without the boundaries of such district, and the delegation generally of a duty to preserve the waters for the watershed area in accordance with regional potential requirements.

In the following instances we have found exceptions to the general policy discussed above:

Guadalupe River Authority. Its boundaries consist of certain named surveys in Comal County. Its right to

control, store, sell and distribute water is acquired
by appropriation in the usual manner by permit from
your Board and the exercise of all privileges obtained
under such permits is subject to the provisions of
Chapter 1, Title 128, R. C. S., 1925, as amended. Since
water is permitted to be moved beyond the watershed by
Article 7590, R. C. S., 1925, which is a part of Chap-
ter 1, Title 128, it would appear that the district
may sell to a purchaser who in turn might apply to your
Board under said Article for a permit to remove the
water so purchased beyond the watershed and beyond the
district's boundaries.

Gulf Water Supply District. Its boundaries con-
sist of Wilson, Karnes, Bee, San Patricio and Nueces
Counties. It is specifically authorized to sell water
to towns, cities and other political subdivisions in the
State of Texas, to private corporations and to indivi-
duals, within or without the district.

San Jacinto Conservation and Reclamation District.
It is bounded by the watershed of the San Jacinto ex-
cept for the County of Harris. As originally enacted,
the Act creating this district contains the usual pro-
visions indicated above. However, by amendment, Acts
1941, page 769, the district was authorized to enter into
any and all necessary and proper contracts with other
agencies, districts and bodies politic and corporate and
others for the storage, conservation, utilization, trans-
portation and sale of impounded waters and electric
power to cities, towns, industrial sites, persons, firms
and corporations within or without the boundaries of the
district.

Upper-Colorado River Authority. This district
is composed of Coke and Tom Green Counties. It is au-
thorized "to sell and distribute water without the
boundaries of the district to any municipality for do-
mestic, municipal and irrigation purposes, and to any
person, firm, or corporation for municipal purposes or
irrigation, together with the right to construct fumes,
irrigation ditches, pipelines and storage reservoirs
without the district for such purposes."

The fact that the Legislature has seen fit in
certain cases to confine sales for manufacturing and
irrigation use within fixed boundaries but has deviated
from this policy in other cases, together with an over-
all policy of localizing certain functions while

generalizing others, leads us to the conclusion that only where sales beyond the district are expressly authorized were they intended to be permitted. It is our opinion that under its present act LCRA has no authority to distribute or sell its stored water for use beyond its boundaries.

In digesting the various conservation and reclamation Acts, we covered and considered only certain of the expressly granted powers and functions accorded such districts. In most cases, these express powers are preceded by a broad grant of authority to exercise all powers and functions conferred upon such districts by general law and by the conservation amendment to the Constitution and that the grant of express power is not intended to limit the general powers so conferred. Sections 1 and 2 of the LCRA Act (supra) are the sections which confer upon it these general powers. In addition, it is usually provided that the Act shall be liberally construed. See Sec. 18, LCRA Act (supra). We have considered these sections with reference to the situation under investigation but have been unable to find any purpose, function or power conferred upon LCRA under the general law or by the conservation amendment to the Constitution which would authorize it to sell stored waters beyond its boundaries in the face of an express directive that it use, distribute and sell such waters within such boundaries.

If the district is not authorized to sell or distribute waters beyond its boundaries, then it necessarily follows that the Legislature intended that these waters be used only within such boundaries. To permit a purchaser from such a district to distribute and use the stored waters purchased by him beyond district boundaries would nullify whatever purpose the Legislature had in mind in placing restrictions on sales by the district of such waters. We have covered at length the various conservation and reclamation district acts because we believe that these acts, with the exceptions indicated, show an overall purpose by the Legislature to preserve for the benefit of the inhabitants of these districts the waters stored by such districts and to permit a purchaser to remove such waters beyond district boundaries would circumvent this purpose. It is our opinion that a purchaser of stored waters under the present LCRA Act may not distribute and use such waters for irrigation and manufacturing purposes beyond LCRA boundaries.

In our opinion, Article 7589, V. C. S., declaring it to be unlawful to remove water beyond the watershed, Article 7590, V. C. S., providing a method by which water may be removed upon application to your Board, and Article 7591, V. C. S., making it a misdemeanor and providing penalties for removing waters without proper authority, have no application to the situation presented. Many of the districts discussed above consist of named counties so that the overall boundary may or may not be coincident with the watershed area. Whether the district boundaries lie within or without the watershed, or whether these boundaries are coincident with the watershed, all of the special acts in question having been enacted subsequent to Articles 7589, 7590 and 7591, have the effect of creating to the extent indicated in each act an exception to the general law stated in said Articles. See 25 R. C. L., p. 929, 59 C. J. p. 936, Sec. 546, 39 T.J. p. 150, Sec. 82, Harris County Drainage District No.12 vs. City of Harris (Com. App.) 35 S. W. (2) 118; Hunt v. Atkinson, County Judge (Com. App.) 12 S. W. (2) 142, and Fortinberry v. State (Com. App.) 283 S. W. 146. The effect of this exception is two-fold; (1) making it lawful to use waters beyond the watershed where the boundaries of the district extend beyond such watershed, and (2) excepting from the operation of Article 7590 the waters involved in the special acts in question to the extent indicated in each of such acts.

We find no decision in Texas on this question. The only related cases we have found are not in point, since in each a statute existed permitting removal of waters beyond district boundaries. See San Jacinto River Conservation and Reclamation District v. Sellers (Tex. Sup. Ct. 1945) 184 S. W. (2) 920; Cameron County Water Improvement District No. 1 v. Daniels (T.C.A. 1925) 269 S. W. 1066.

Outside Texas the few cases found are not in harmony. The rule laid down in Jenison v. Redfield (Cal. Sup. Ct. 1906) 87 P. 26, involving an irrigation district, confines water strictly to district boundaries, holding that the waters of such districts are held in trust for their inhabitants and may not be used beyond district boundaries in the face of a statute restricting use within such boundaries. On the other hand, the following cases, while announcing the rule laid down in the Jenison case, place an exception upon this rule, holding that if the rights of the inhabitants of the district are not injured and if there

is a surplus of water, the district may furnish water for use beyond its boundaries. See Yaden v. Gem Irrigation District (Idaho Sup. Ct. 1923) 216 P. 250; Koch v. Colvin (Mont. Sup. Ct. 1940) 105 P. (2) 334, and Maclay v. Missoula Irrigation District (Mont. Sup. Ct. 1931) 3 P. (2) 286. In our opinion, the principles announced in these cases with regard to irrigation districts do not necessarily apply to conservation and reclamation districts such as LCRA due to the broader purpose for which the conservation and reclamation district has been created and the more extensive area over which this purpose extends. See Brazos River Conservation and Reclamation District v. McCraw (Tex. Sup. Ct. 1936) 91 S. W. (2) 670.

## SUMMARY

Under its present Act (Ch. 7, Acts 43rd Legis. 4th C.S.1934, as amended), waters stored by the Lower Colorado River Authority may not be distributed or sold by it for irrigation or manufacturing use beyond the Authority's boundaries. This restriction also relates to purchasers from the Authority.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          H. D. Pruett, Jr.
                    Assistant

APPROVED

ATTORNEY GENERAL

HDP:bt